

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00210-CR

**CEPHUS LOUIS JACKSON, JR.,**

                                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                **Appellee**

From the 272nd District Court
Brazos County, Texas
Trial Court No. 11-04303-CRF-272

## MEMORANDUM  OPINION

In one issue, appellant, Cephus Louis Jackson Jr., challenges his conviction for burglary of a vehicle with two or more prior convictions. *See* TEX. PENAL CODE ANN. § 30.04(a) (West 2011). Specifically, Jackson asserts that the trial court abused its discretion by failing to grant a mistrial after nine venirepersons observed Jackson being fingerprinted by a police officer. We affirm.

# I. BACKGROUND

Jackson was charged by indictment with burglary of a vehicle with two or more prior convictions. The State subsequently filed a notice of enhancement, alleging four enhancements that could increase punishment to either a second-degree or third-degree felony. Thereafter, the State filed a motion to compel the fingerprinting of Jackson.

Prior to voir dire and the seating of the jury, Rebecca Wendt, a Crime-Scene Investigator for the Bryan Police Department, fingerprinted Jackson at the front of the courtroom. However, Investigator Wendt inadvertently took Jackson's fingerprints in front of eight venirepersons. One of the prosecutors noticed this and immediately informed defense counsel, who objected to the process. Jackson was then "shuffled back to the back room in front of the eight jurors."

Defense counsel informed the trial judge of what had happened. Specifically, defense counsel objected that the fingerprinting process in this case violated Jackson's right to have a randomly selected jury panel. Defense counsel then moved for a mistrial. After consultation with defense counsel and the attorneys for the State, the trial judge offered the following:

THE COURT:      All right. Here's what I'm going to do. I'm going to give you two choices, both of which will mean that you preserve your objection and your ruling on your motion.

         Choice No. 1 is I overrule your motion and your objection, and we go forward with the panel as seated, including the—the eight.

Choice No. 2 is I overrule the objection and your motion, and we let the eight go and proceed with those that are left.

You pick which one you want and preserve your objections at the same time.

Jackson opted to "let the eight go."

It was later discovered that a ninth venireperson witnessed the fingerprinting of Jackson, and that individual was subsequently excused from jury service. The jury pool was then shuffled pursuant to the State's request. The parties conducted voir dire with the remaining jurors in the panel. Neither side made a challenge for cause. After both the State and Jackson submitted their strike lists, the trial judge asked Jackson if he had any objections to the twelve venirepersons that constituted the jury. Jackson stated that he did not have any objections, and the jury was eventually seated.[1]

Ultimately, the jury found Jackson guilty of the charged offense, concluded that the enhancements were true, and sentenced Jackson to sixteen years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II.    STANDARD OF REVIEW

We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). Under this standard, we uphold the trial court's ruling as long as the ruling is within the zone of reasonable disagreement. *Id.* "'A mistrial is a device used to halt trial proceedings

---

[1] The record indicates that the initial jury pool contained seventy-five people. However, after excusing the nine jurors who witnessed the fingerprinting and three jurors due to illness, the jury pool consisted of sixty-three.

when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)).  It is appropriate only for "a narrow class of highly prejudicial and incurable errors."  *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  Therefore, a trial court properly exercise its discretion to declare a mistrial when, due to the error, "an impartial verdict cannot be reached" or a conviction would have to be reversed on appeal due to "an obvious procedural error."  *Wood*, 18 S.W.3d at 648; *see Ladd*, 3 S.W.3d at 567.

## III.   ANALYSIS

In his sole appellate issue, Jackson contends that the trial court abused its discretion in failing to grant him a mistrial because nine venirepersons witnessed him being fingerprinted by law enforcement.  In particular, Jackson asserts that fingerprinting deprived him of the presumption of innocence; that the venire was tainted; and the decision to excuse the nine jurors deprived him of a random jury.

## A.   Applicable Law

It is appellant's burden to make a specific and proper objection and then call the attention of the trial court to the specific complaint raised on appeal.  *Alvarado v. State*, 822 S.W.2d 236, 239 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (citing *Little v. State*, 758 S.W.2d 551, 563 (Tex. Crim. App. 1988)).  When a trial judge excuses jurors sua sponte, appellant must establish that "'he was tried to a jury to which he had a legitimate objection.'"  *Id.* (quoting *Warren v. State*, 768 S.W.2d 300, 303 (Tex. Crim. App. 1989)).  "Merely asserting that appellant was tried to a jury to which he had a legitimate

objection is insufficient to establish harm." *Id.* (citing *Green v. State*, 764 S.W.2d 242, 247 (Tex. Crim. App. 1989)).  The *Green* Court established that, to preserve error and establish harm in cases such as this, appellant must:  (1) object to the excusal of the juror; (2) at the conclusion of the voir dire claim that he is to be tried by a jury to which he has a legitimate objection; (3) specifically identify the juror or jurors that he is complaining about; and (4) exhaust all of his peremptory challenges and request additional peremptory challenges.  764 S.W.2d at 247.

**B.      Discussion**

Based on our review of the record, we do not believe that the trial court abused its discretion in denying Jackson's motion for mistrial.  We first note that Jackson did not preserve error and establish harm in accordance with the standard articulated in *Green*.  *See id.*  Specifically, Jackson did not object to the jury that was ultimately sworn in.  *See id.*  And though he initially objected, Jackson eventually agreed to the excusal of the nine venirepersons.  In any event, even if we were to conclude that he preserved error, Jackson's appellate arguments are unpersuasive.

Jackson first argues that his fingerprinting in the front of the courtroom violated the presumption of innocence at trial.  In making this argument, Jackson equates his fingerprinting with a trial judge allowing a defendant to be in shackles during trial.  We do not find this analogy to be relevant to this situation for several reasons.  In the instant case, the jury had not been seated, nor had voir dire commenced.  However, in the shackling cases cited by Jackson, a seated jury observed a defendant in shackles during trial—facts that did not transpire in this case.  *See, e.g., Long v. State*, 823 S.W.2d

259, 282-83 (Tex. Crim. App. 1991); *Wiseman v. State*, 223 S.W.3d 45, 49-52 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Furthermore, the jurors who observed Jackson being fingerprinted were excused from serving on the jury, leaving the remaining jurors presumably unaware of the fingerprinting event.

Jackson also contends that the fingerprinting tainted the venire. There is no evidence in the record to suggest that the jury that was ultimately empaneled observed or knew about the fingerprinting incident. The jurors that did observe the incident were promptly removed, thus confining any possible taint to those jurors that were excused. Therefore, besides Jackson's own speculation, there is nothing in the record to support any suggestion of jury tainting.

And finally, Jackson asserts that the excusal of the nine jurors deprived him of a random jury. In support of this contention, Jackson fails to direct us to authority or record citations. *See* TEX. R. APP. P. 38.1(i). Regardless, it is noteworthy that Jackson was posed with a choice with regard to the fingerprinting incident. The trial judge allowed Jackson to choose to either proceed with the nine venirepersons in the jury pool or to excuse the nine venirepersons. Jackson chose to exclude the nine venirepersons. Had he chosen to proceed with the nine venirepersons, Jackson could have asked questions during voir dire to determine whether challenges for cause or peremptory challenges should be used on the nine venirepersons. He could have also requested additional peremptory challenges to strike the nine venirepersons. *See Green*, 764 S.W.2d at 247. In addition, with a jury shuffle, it was possible that the nine venirepersons would never have been within the strike zone. Additionally, it is

noteworthy that, after the excusals, the jury pool contained sixty-three venirepersons from which to choose.

Moreover, the Texas Court of Criminal Appeals has stated that: "[A] defendant has no right that any particular individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified. The defendant's rights go to those who serve, not to those who are excused." *Jones v. State*, 982 S.W.2d 386, 393 (Tex. Crim. App. 1998). Jackson does not assert that the jurors who served on the panel were unqualified, and the record does not support Jackson's contention that he did not receive a fair and impartial trial.

Therefore, based on the foregoing, we do not believe that Jackson has satisfied his burden in demonstrating that the trial court's denial of his motion for mistrial was an abuse of discretion. *See Archie*, 221 S.W.3d at 699-700; *see also Wood*, 18 S.W.3d at 648. Accordingly, we overrule Jackson's sole issue on appeal.

## IV.  CONCLUSION

Having overruled Jackson's sole issue on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed June 20, 2013
Do not publish
[CR25]